**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CYNTHIA LEVEN and HARRIS KHAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STAPLES, INC., USR PARENT INC., THE STAPLES, INC. COMMITTEE ON EMPLOYEE BENEFIT PLANS, THE STAPLES, INC. 401(k) INVESTMENT COMMITTEE, and JOHN DOES 1-20, <br><br> Defendants. | Case No.: 4:25-cv-12764-MRG <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **Leave to file Reply granted on 1/7/26. Dkts. 30-31.** |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS COUNTS I AND II OF PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 2

        A.    Plaintiffs Fail To State A Plausible Investment Imprudence Claim ...................... 2

                1.    *Barchock* Requires Dismissal Of Plaintiffs' Claim ................................... 2

                2.    Plaintiffs' Meaningless Fund Comparisons Do Not Suggest Imprudence ........................................................................................ 3

                3.    The Stable Value Option's Alleged Underperformance Was Insufficient To Raise An Inference Of Imprudence ................................. 6

        B.    Plaintiffs Fail To State A Plausible Claim Based On The Plans' Recordkeeping Fees ......................................................................................... 9

                1.    The Judicially Noticeable Services Agreements Render The Complaint's Fee Allegations Implausible .................................................. 9

                2.    Plaintiffs Fail To Suggest Imprudence Without Meaningful Comparisons ...................................................................................... 11

                3.    Plaintiffs Fail To Allege That The Plans' Recordkeeping Fees Were Excessive Relative To Services Rendered .................................... 13

        C.    Plaintiffs' Derivative Duty To Monitor Claim Fails........................................... 16

III.    CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barchock v. CVS Health Corp.*,
    886 F.3d 43 (1st Cir. 2018).................................................................................1, 2, 3, 16

*Barrett v. O'Reilly Auto., Inc.*,
    112 F.4th 1135 (8th Cir. 2024) .........................................................................................16

*Beddall v. State St. Bank & Tr. Co.*,
    137 F.3d 12 (1st Cir. 1998)...............................................................................................11

*In re Biogen, Inc. ERISA Litig.*,
    2021 WL 3116331 (D. Mass. July 22, 2021).....................................................................8

*Brewer v. All. Coal, LLC*,
    2025 WL 3527171 (N.D. Okla. Dec. 9, 2025)..................................................................13

*Brookins v. Ne. Univ.*,
    731 F. Supp. 3d 112 (D. Mass. 2024) ................................................................................8

*Brotherston v. Putnam Invs., LLC*,
    907 F.3d 17 (1st Cir. 2018)............................................................................................3, 4

*Brown v. MITRE Corp.*,
    2023 WL 2383772 (D. Mass. Mar. 6, 2023)................................................................3, 12

*Daggett v. Waters Corp.*,
    731 F. Supp. 3d 121 (D. Mass. 2024) ..............................................................................10

*Disselkamp v. Norton Healthcare, Inc.*,
    2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) .....................................................................8

*Dubliner, Inc. v. E. Coast Tavern Grp., Inc.*,
    706 F. Supp. 3d 181 (D. Mass. 2023) ..............................................................................10

*Dukes v. AmerisourceBergen Corp.*,
    2024 WL 4282309 (W.D. Ky. Sept. 24, 2024) ................................................................16

*Ellis v. Fidelity Mgmt. Tr. Co.*,
    883 F.3d 1 (1st Cir. 2018)...................................................................................................3

*England v. DENSO Int'l Am., Inc.*,
    136 F.4th 632 (6th Cir. 2025) ...........................................................................12, 13, 14, 16

*Gordon-Johnson v. Clinical & Support Options, Inc.*,
  766 F. Supp. 3d 319 (D. Mass. 2025) ....................................................................9

*Gosse v. Dover Corp.*,
  2025 WL 2996795 (N.D. Ill. Oct. 24, 2025)..........................................................15

*Hughes v. Nw. Univ.*,
  63 F.4th 615 (7th Cir. 2023) ..................................................................................12

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
  2022 WL 973581 (W.D. Pa. Mar. 31, 2022) ............................................................6

*Laabs v. Faith Techs., Inc.*,
  2023 WL 9321358 (E.D. Wis. Aug. 30, 2023) .........................................................5

*Lacrosse v. Jack Henry & Assocs., Inc.*,
  2024 WL 3564575 (W.D. Mo. July 11, 2024)...........................................................8

*Lalonde v. Mass. Mut. Ins. Co.*,
  728 F. Supp. 3d 141 (D. Mass. 2024) ............................................................ *passim*

*Lard v. Marmon Holdings, Inc.*,
  2023 WL 6198805 (N.D. Ill. Sept. 22, 2023) .....................................................7, 14

*Mateya v. Cook Grp. Inc.*,
  2024 WL 6879794 (S.D. Ind. Jan. 23, 2024) .........................................................16

*Mator v. Wesco Distrib., Inc.*,
  102 F.4th 172 (3d Cir. 2024) .............................................................................11, 16

*Miller v. AutoZone, Inc.*,
  2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020)...................................................7, 8

*MJ's Mkt., Inc. v. Jushi Holdings, Inc.*,
  766 F. Supp. 3d 197 (D. Mass. 2025) ......................................................................9

*Payne v. Hormel Foods Corp.*,
  2024 WL 4228613 (D. Minn. Sep. 18, 2024) ...........................................................8

*Piercy v. AT&T Inc.*,
  2025 WL 2505660 (D. Mass. Aug. 29, 2025) ......................................................4, 6

*Rodriguez v. Hy-Vee, Inc.*,
  2022 WL 16648825 (S.D. Iowa Oct. 21, 2022)...................................................7, 11

*Sandoval v. Novitex Enter. Sols. Emps. Benefits Comm.*,
  2018 WL 11393375 (D. Conn. Nov. 20, 2018) ......................................................10

*Seidner v. Kimberly-Clark Corp.*,
2023 WL 11981126 (N.D. Tex. Dec. 13, 2023) .......................................................................11

*Somers v. Cape Cod Healthcare, Inc.*,
2024 WL 4008527 (D. Mass. Aug. 30, 2024) ...........................................................................7

*Stengl v. L3Harris Techs., Inc.*,
2023 WL 2633333 (M.D. Fla. Mar. 24, 2023) .......................................................................10

*Terraza v. Safeway Inc.*,
241 F. Supp. 3d 1057 (N.D. Cal. 2017) .................................................................................10

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) ................................................................................................13

*In re Unisys Sav. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996).....................................................................................................6

*United States v. Hafen*,
726 F.2d 21 (1st Cir. 1984).....................................................................................................7

iv

## I.    **<u>INTRODUCTION</u>**

Plaintiffs argue their Complaint is unique and does not rely on the same flawed theories of liability that have doomed similar claims. But their Opposition brief confirms the opposite.

***First,*** Plaintiffs' challenge to the Great-West/Empower Stable Value Option ("Stable Value Option") is premised on the same performance-based allegations the First Circuit rejected in *Barchock v. CVS Health Corp.*, 886 F.3d 43 (1st Cir. 2018). Plaintiffs do not dispute that the Complaint is devoid of allegations that the Stable Value Option failed to meet its objective, as in *Barchock*. This alone compels dismissal. And Plaintiffs cannot state a viable underperformance claim by comparing the Stable Value Option to different stable value funds with different characteristics in different years because those kinds of comparisons are not meaningful benchmarks. Plaintiffs argue they can disregard the meaningful-benchmark requirement because the Complaint offers allegations challenging Defendants' fiduciary process. But Plaintiffs' "process allegations" are just repackaged underperformance allegations. Further, the Complaint's allegations of minimal, inconsistent "underperformance" do not plausibly infer imprudence.

***Second,*** Plaintiffs cannot save their recordkeeping-fee claim from dismissal. Despite clear Circuit precedent, Plaintiffs incorrectly argue that the Court may not consider the Plans' services agreements with recordkeeper Empower. The judicially noticeable documents, whose authenticity Plaintiffs do not challenge, render Plaintiffs' "excessive" recordkeeping fee allegations implausible because they confirm the Plans' fees were *lower* than alleged in the Complaint. Plaintiffs try to sweep aside the Complaint's faulty comparisons to plans of varying sizes, but those material differences preclude any inference of imprudence based on fees. And the Opposition fails to identify any factual allegations about the specific services provided to the Plans or *any plan* at all, instead falling back on the conclusory allegation that all large plans receive the same services. While Plaintiffs point to Form 5500 "service codes," those codes say nothing about the actual

1

services provided to the Plans and only highlight the differences among their so-called comparators and the Plans. Without context-specific allegations, the Complaint does not plausibly suggest that the Plans' recordkeeping fees were "excessive relative to the services rendered," as required to state a claim. *Lalonde v. Mass. Mut. Ins. Co.*, 728 F. Supp. 3d 141, 157-58 (D. Mass. 2024) (citation omitted).

**Third,** the parties agree that Plaintiffs' monitoring claim in Count II is derivative of their fiduciary-breach claims in Count I. Because Plaintiffs do not state a claim of fiduciary breach, the Court should dismiss their monitoring claim.

## II.    ARGUMENT

### A.    Plaintiffs Fail To State A Plausible Investment Imprudence Claim.

#### 1.    *Barchock* Requires Dismissal Of Plaintiffs' Claim.

Plaintiffs' challenge to the Stable Value Option is premised on the hindsight-based allegation that the Stable Value Option's crediting rates were lower than other stable value funds in the market. Dkt. 27, Defs.' Memorandum ("Mem."), at 8; Dkt. 32, Pls.' Opposition ("Opp."), at 4. The Opposition does not point to any allegations in the Complaint that the Stable Value Option failed to meet its objective of preserving capital, because there are none. Under *Barchock*, this is a fundamental pleading deficiency, and Plaintiffs' claim fails. 886 F.3d at 53-55.

Plaintiffs try to skirt *Barchock* by arguing it was limited to a "distinct theory" challenging a fund's investment strategy. Opp. at 9. *Barchock* is not so narrow. In affirming dismissal, the First Circuit recognized that alleging a stable value fund was managed "too much" like a money market fund (i.e., too conservatively) was, at bottom, an allegation that the fund's returns were poor. *Barchock*, 886 F.3d at 49. The Court rightly rejected that theory. *Id.* at 52 ("[I]t is hard to see how the fact that a stable value fund was run conservatively indicates that it was being run imprudently[.]"). The *Barchock* plaintiffs also alleged *more* about the challenged stable value fund

than Plaintiffs do here, including that the fund's asset allocations "departed radically" from the investment standards prevailing at the time. Even so, the First Circuit rejected this theory because "conservativism in the management of a stable value fund—when consistent with the fund's objectives disclosed to the plan participants—is no vice." *Id.* at 50. The Complaint here contains no allegations about the Stable Value Option's asset allocations, investment strategy, holdings, or other investment characteristics. Mem. at 5, 10-11.

The Opposition relies on *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17 (1st Cir. 2018), arguing it held that fiduciaries "may cause a loss even when the fund is conservative." Opp. at 10. *Brotherston*, which reviewed a trial decision, does not help Plaintiffs. They cite the decision's discussion about measuring loss *after* the court conditionally assumed that the defendants breached their fiduciary duties in selecting the Putnam plan's investment options, which were Putnam's own mutual funds. 907 F.3d at 31-32. That discussion has no bearing here, where Plaintiffs have failed to clear the threshold hurdle of plausibly alleging a fiduciary breach in the first place. Moreover, contrary to Plaintiffs' suggestion, *Brotherston* left the holdings in *Barchock* and *Ellis v. Fidelity Management Trust Co.*, 883 F.3d 1 (1st Cir. 2018), untouched—the court did not even mention *Barchock* and cited *Ellis* favorably. *Brotherston*, 907 F.3d at 40. Accordingly, as in *Barchock*, Plaintiffs fail to state a plausible claim for relief.[1]

### 2. Plaintiffs' Meaningless Fund Comparisons Do Not Suggest Imprudence.

Trying to dodge the meaningful-benchmark analysis, Plaintiffs portray the Complaint as alleging facts about Defendants' process for overseeing the Stable Value Option. Opp. at 4, 7. But the Complaint does not allege *any* facts about Defendants' process for selecting or monitoring the

---

[1] The discussion of *Barchock* in *Brown v. MITRE Corp.*, 2023 WL 2383772, at *4 (D. Mass. Mar. 6, 2023), cited at Opp. 9, is not relevant because *Brown* did not involve an investment performance claim.

3

Stable Value Option. Compl. ¶ 81. Instead, Plaintiffs assert that because the Stable Value Option was not the highest-performing stable value fund in the market, that necessarily means that Defendants failed to investigate the stable value fund marketplace. Opp. at 4-5. These so-called "process allegations" are just repackaged underperformance allegations, which turn on Defendants' supposed failure to secure a higher crediting rate. From this, Plaintiffs ask the Court to infer a flawed fiduciary process based on the crediting rate differences between the Stable Value Option and a handful of other "comparator" stable value funds in the market. Compl. ¶¶ 85, 99-108. The Court should reject Plaintiffs' performance allegations in disguise. *See Lalonde*, 728 F. Supp. 3d at 156-57.[2]

Indeed, the Court cannot infer imprudence based on an investment offering *without* meaningful fund comparisons. *See, e.g.*, *Lalonde*, 728 F. Supp. 3d at 157 (recognizing "appropriate comparators" are necessary to "plausibly allege a breach of fiduciary duty"); *see also* Mem. at 9-10.[3] That is where the Complaint strikes out. Plaintiffs argue that *any* stable value fund can be

---

[2] Plaintiffs say the Complaint alleges that Defendants failed to leverage the Plans' size to secure a higher crediting rate. Opp. at 7-8. Yet the Complaint merely alleges that "because the Plans held between $1.6 billion and $1.8 billion combined in assets under management throughout the Class Period, they had considerable leverage to bargain for higher crediting rates." Compl. ¶ 108. It does not actually allege any facts about Defendants' bargaining process. Nor do Plaintiffs explain how the Plans' total asset size (combined or as separate plans) impacts the Stable Value Option's crediting rate. A plan's asset size represents the investment in *all* of the plan's investment options. Here, the amount invested in the Stable Value Option was approximately $102 million to $123 million through the Savings Plan and $19 million to $22 million through the Retail Plan. Compl. ¶¶ 57, 65. Plaintiffs offer no justification for their assertion that Great-West/Empower would offer higher crediting rates based on the amounts participants invested in *other companies'* funds.

[3] The Opposition describes *Brotherston* as holding that "disputes about 'suitable benchmarks'" are "expert level 'questions of fact.'" Opp. at 10. That quotation—plucked from the First Circuit's post-trial discussion of the sufficiency of evidence to support a finding of loss—was not the Court's holding. *See Brotherston*, 907 F.3d at 34. And recent Rule 12 decisions show Plaintiffs are wrong about the importance of meaningful benchmarks: "the first thing that emerges from reviewing [Rule 12] cases within this circuit is that the existence of meaningful comparators is important—possibly essential—when there is no direct evidence about the fiduciary's actual decision-making process." *Piercy v. AT&T Inc.*, 2025 WL 2505660, at *38-39 (D. Mass. Aug. 29, 2025) (collecting cases), *R. & R. adopted*, 2025 WL 2809008 (D. Mass. Sep. 30, 2025).

compared to *any other* stable value fund, regardless of the specifics of the individual investment contracts at issue. Opp. at 11 (contending all alleged benchmarks are "meaningful"). As Defendants explained, that is an unworkable theory of liability, because different types of stable value funds have different structures, different risk profiles, and different expectations regarding crediting rates and returns for investors. Mem. at 4-5, 10-12.[4]

In response, the Opposition pivots, arguing that general account stable value funds like the Stable Value Option are "the riskiest type." Opp. at 4, 12. Setting aside Plaintiffs' inappropriate attempt to rewrite their pleading (which makes no such allegation), if that is the case, then why does the Complaint allege that other general account products were prudent alternatives and should have been offered instead? Compl. ¶ 102; Opp. at 12. These allegations concede that there is no inherent "problem[]" with offering a traditional stable value fund. Compl. ¶ 92; *see also Lalonde*, 728 F. Supp. 3d at 148 (rejecting challenge to general account stable value fund); *Laabs v. Faith Techs., Inc.*, 2023 WL 9321358, at *8 (E.D. Wis. Aug. 30, 2023) (same), *R. & R. adopted*, 2024 WL 218418 (E.D. Wis. Jan. 19, 2024).

Regardless, Plaintiffs' argument about the purported "riskiness" of the general account Stable Value Option does not state a claim. In *Lalonde*, the plaintiffs similarly alleged that plan fiduciaries imprudently offered a general account stable value fund rather than a separate account product. 728 F. Supp. 3d at 148. These allegations failed to state a claim because, among other reasons, "'plans are under no duty to offer any particular type or mix of funds,' so the mere fact Defendants offered the [general account product] but not the [separate account product] is insufficient to plausibly allege breach." *Id.* at 156 (citation omitted).

---

[4] Plaintiffs argue that not all stable value funds are benefit-responsive (meaning the fund provides daily liquidity for all participants). Opp. at 13 & n.7. Plaintiffs' sole support is one Form 5500 for the Penn State Health 401(k) Savings Plan, which is not mentioned in the Complaint and is thus irrelevant.

Finally, Plaintiffs mischaracterize Defendants' argument regarding the Complaint's comparisons. Opp. at 13. Defendants do not criticize Plaintiffs for failing to "alleg[e] facts in [investment] contracts that are solely in the fiduciaries' possession." *Id.* Rather, Defendants argue that the "broad-brush" comparisons between the Stable Value Option and Plaintiffs' comparators are not meaningful. *Piercy*, 2025 WL 2505660, at *39; *see also* Mem. at 10. Nor do Defendants argue that "infrequent (if ever) liquidity events and other contract terms such as duration would excuse persistently low rates." Opp. at 13. The point is that different stable value funds have different characteristics, so merely comparing crediting rates (i.e., performance) cannot support an inference of imprudence. Mem. at 9-10. Plaintiffs' cited cases do not suggest otherwise. *See In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 436 (3d Cir. 1996) (discussing evidence presented at summary judgment from which a reasonable factfinder could conclude that investigations into stable value fund purchases were deficient); *Johnson v. PNC Fin. Servs. Grp., Inc.*, 2022 WL 973581 (W.D. Pa. Mar. 31, 2022) (no claim involving a stable value fund).

### 3. The Stable Value Option's Alleged Underperformance Was Insufficient To Raise An Inference Of Imprudence.

Defendants explained that Plaintiffs' "underperformance" allegations fail to raise an inference of imprudence because the alleged performance differences were neither substantial nor consistent. Mem. at 12-13. Plaintiffs offer several retorts, but none has merit.

***First,*** Plaintiffs try to dress up the alleged performance differences by asserting the Stable Value Option underperformed Plaintiffs' comparators "by an average of over 37% during the Class Period." Opp. at 5. That is not an accurate reflection of the difference between the products' rates (i.e., subtracting the lower rate from the higher). The alleged differences were 1.63% in 2019; 1.42% in 2020; 2.38% in 2021; 2.29% in 2022; and 1.71% in 2023. Compl. ¶ 104. Plaintiffs' 37% figure is an example of how using percentage-based comparisons with small numbers inflates the

appearance of underperformance—a tactic courts have rejected in other cases and that the Court should reject here. *See Rodriguez v. Hy-Vee, Inc.*, 2022 WL 16648825, at *2 n.3 (S.D. Iowa Oct. 21, 2022) (explaining percentage-based comparisons with low numbers can be "misleading" even when mathematically correct); *see also United States v. Hafen*, 726 F.2d 21, 24 (1st Cir. 1984) (explaining how small numbers can "distort" comparisons using percentages).

**Second,** Plaintiffs baselessly assert the Court can infer imprudence because the Stable Value Option's rate of return "decreased when the market's rates were increasing." Opp. at 8. Nothing in the Complaint supports Plaintiffs' contention that the smattering of alleged comparators are representative of the "market's rates." Further, according to Plaintiffs' own allegations, the Stable Value Option's rate of return *increased* from year to year while the comparators' average rate *decreased*, other than between 2020 and 2021. Compl. ¶ 104. Yet, Plaintiffs identify just *one* stable value fund whose rate increased between 2020 and 2021 (the American United Life plan's stable value fund). *Id*. ¶ 103. This does not state a viable investment imprudence claim. *See Lard v. Marmon Holdings, Inc.*, 2023 WL 6198805, at *4 (N.D. Ill. Sept. 22, 2023) (dismissing claim premised on comparing "two 'properly performing' comparators" in a single year); Mem. at 13.

**Third,** Plaintiffs point to a handful of cases refusing to dismiss investment claims, but they are all distinguishable. For example, in *Somers v. Cape Cod Healthcare, Inc.*, 2024 WL 4008527 (D. Mass. Aug. 30, 2024), the plaintiffs stated a plausible claim involving a Lincoln Financial Group stable value fund with a guaranteed minimum return of 1% because Lincoln offered the *exact same fund* to its own plan participants with a guaranteed rate of 3%. *Id.* at *5.[5] Miller v. AutoZone, Inc.*, 2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020), is similarly inapposite because

---

[5] Plaintiffs incorrectly claim *Somers* denied dismissal where a fund underperformed by just "0.07%." Opp. at 10. The 0.07% figure referenced in *Somers* was the *expense ratio*—the fee—for a Vanguard mid-cap fund that was allegedly more prudent than the challenged mid-cap fund. 2024 WL 4008527, at *5.

the plaintiffs alleged that the *same investment provider* offered the *same stable value fund* to other plans at a higher crediting rate. *Id.* at \*5. Nothing of the sort is alleged here.

Plaintiffs' other cases, *see* Opp. at 14-15, involved allegations of persistent underperformance relative to the *same comparators* over the entire relevant period, not just certain cherry-picked years. *See Lacrosse v. Jack Henry & Assocs., Inc.*, 2024 WL 3564575, at \*3 (W.D. Mo. July 11, 2024) (consistent comparators had higher rates throughout class period); *Payne v. Hormel Foods Corp.*, 2024 WL 4228613, at \*2 (D. Minn. Sep. 18, 2024) (comparator had higher returns every quarter for six years); Complaint ¶¶ 57-58, Carter v. Sentara Healthcare Fiduciary Comm., No. 2:25-cv-16 (E.D. Va. Jan. 8, 2025) (alleging fund underperformed a "similarly situated" comparator and peer group average for five years); *In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331, at \*3 (D. Mass. July 22, 2021) (fund trailed investment managers' benchmark for prior five years).[6] Here, in contrast, the Complaint compares the Stable Value Option to a mishmash of other stable value funds (and an annuity) of varying structural types, sometimes for only a single year. Mem. at 13-14; *Lalonde*, 728 F. Supp. 3d at 156-57 ("[S]imply selecting two alleged comparator funds with higher credit return rates over a seven-year period is the type of hindsight-based allegation which is insufficient to support a plausible inference of breach.").

***Fourth,*** Plaintiffs argue that their underperformance allegations present "premature factual disputes." Opp. at 14. But the parties do not dispute the Stable Value Option's or comparators' alleged crediting rates, unlike in Plaintiffs' cited authority. *See, e.g.*, *Disselkamp v. Norton*

---

[6] *Brookins v. Northeastern University*, 731 F. Supp. 3d 112 (D. Mass. 2024), cited at Opp. 14, does not help Plaintiffs, either. Unlike here, the *Brookins* plaintiffs alleged that a mutual fund underperformed three comparators with "similar underlying asset allocations" by 2.19% to 3.58% based on three- and five-year returns. 731 F. Supp. 3d at 119-20; *see also* Compl. ¶¶ 92-93, Brookins v. Ne. Univ., 731 F. Supp. 3d 112 (D. Mass. 2024) (No. 1:22-cv-11053), 2022 WL 22992634. Here, Plaintiffs do not allege similarly sustained or significant underperformance against consistent comparators.

*Healthcare, Inc.*, 2019 WL 3536038, at \*8 (W.D. Ky. Aug. 2, 2019) (noting factual disputes about funds' "comparative credit ratings").

      **B.**      **Plaintiffs Fail To State A Plausible Claim Based On The Plans' Recordkeeping Fees.**

            **1.**      **The Judicially Noticeable Services Agreements Render The Complaint's Fee Allegations Implausible**.

Defendants explained that the Plans' recordkeeping services agreements show Plan participants paid lower fees than the Complaint alleges, which discredits Plaintiffs' "excessive" fee allegations. Mem. at 14-15. In response, Plaintiffs do not dispute the agreements' authenticity or Defendants' accurate recitation of the per-participant fees from those agreements.[7] Nor do they dispute that the agreements show the Plans have a fixed-dollar fee structure, which Plaintiffs allege is the type "prudent fiduciaries" use. Compl. ¶ 121. Instead, Plaintiffs try to shield the Complaint's flawed allegations from scrutiny by arguing that (i) the Court cannot consider the services agreements at this juncture, and (ii) Plaintiffs' recordkeeping fee allegations "control" in any event. Opp. at 15-16. The Court should reject both arguments.

Contrary to Plaintiffs' misleading and selective quotation of *Gordon-Johnson v. Clinical & Support Options, Inc.*, 766 F. Supp. 3d 319 (D. Mass. 2025), the Court may consider "documents incorporated by reference" in a complaint when considering a Rule 12 motion. *Id.* at 327 (citation omitted). The same is true of "documents central to Plaintiff's claim." *MJ's Mkt., Inc. v. Jushi Holdings, Inc.*, 766 F. Supp. 3d 197, 209 (D. Mass. 2025); *see also* Mem. at 15 n.17. Here, the Complaint expressly references the Plans' services agreements with Empower. Compl. ¶ 109. And the fees paid pursuant to those agreements are central to Plaintiffs' recordkeeping-fee claim. *Id.*

---

[7] Defendants provided the complete services agreements to Plaintiffs long before they filed their Opposition. Mem. at 15 n.17; Dkt. 33 ¶ 6. Plaintiffs chose not to amend their Complaint after receiving these documents or in response to Defendants' Motion. They cannot wield that decision against Defendants.

¶¶ 121-32. The Court therefore may properly consider the agreements in deciding Defendants' Motion. *See, e.g.*, *Sandoval v. Novitex Enter. Sols. Emps. Benefits Comm.*, 2018 WL 11393375, at *5 (D. Conn. Nov. 20, 2018) (considering recordkeeping agreement "integral" to claim that defendants paid excessive recordkeeping fees).[8]

Plaintiffs get the law backward when arguing the Complaint's fee allegations supersede a contract's express terms. Where "documents contradict allegations in the complaint, the documents trump the allegations." *Dubliner, Inc. v. E. Coast Tavern Grp., Inc.*, 706 F. Supp. 3d 181, 194 (D. Mass. 2023) (citation omitted). Plaintiffs' own cited case—*Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057 (N.D. Cal. 2017) (Opp. at 15)—illustrates the point. There, the court reviewed participant fee disclosures and Form 5500s attached to a motion to dismiss, concluding those judicially noticeable documents "rendered implausible" allegations that the defendants failed to adequately disclose fee payments. *Id.* at 1072-73.[9]

The Complaint puts forward Plaintiffs' calculations of estimated annual per-participant recordkeeping fees for each Plan based on various data reported in the Plans' Form 5500s. Compl. ¶¶ 122, 126 n.17.[10] But the Plans' services agreements show exactly what those per-participant fees were—and that the fees were lower than those alleged in the Complaint. It is not necessary to calculate, extrapolate, or speculate, as the Complaint does. Plaintiffs' allegations regarding the

---

[8] Plaintiffs' cited cases (Opp. at 15) are inapposite. In *Daggett*, there was no contract contradicting the complaint's allegations. *Daggett v. Waters Corp.*, 731 F. Supp. 3d 121, 136-37 (D. Mass. 2024) (declining to accept defendants' "own analysis" of materials). In *Stengl*, unlike here, Eleventh Circuit precedent precluded consideration of the documents and the court could not "simply look[] up" the relevant data. *Stengl v. L3Harris Techs., Inc.*, 2023 WL 2633333, at *9 n.9 (M.D. Fla. Mar. 24, 2023).

[9] Contrary to Plaintiffs' contention, *Terraza* did not hold that Form 5500s "control" because they reflect a plan's "actual" fees. Opp. at 15.

[10] Plaintiffs misconstrue Defendants' argument. Opp. at 16 n.9. Defendants do not suggest that the Plans' Form 5500s are inaccurate. Rather, Defendants argue that Plaintiffs' allegations of the Plans' per-participant fees are not plausible in view of the services agreements' plain terms.

10

Plan's per-participant recordkeeping fees do not state a plausible claim. *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 20 (1st Cir. 1998) (holding trust agreement submitted with motion to dismiss rendered implausible allegations regarding defendant's fiduciary status).[11]

### 2. Plaintiffs Fail To Suggest Imprudence Without Meaningful Comparisons.

Plaintiffs' recordkeeping-fee claim also fails because the Complaint relies on unsound comparisons to suggest imprudence. Nearly half of Plaintiffs' comparator plans have less than $1 billion in assets, the threshold at which Plaintiffs allege plans receive essentially the same services. And their comparator plans' assets and participant sizes far exceed those of the Retail Plan, rendering those comparisons meaningless. Mem. at 18-19.

Rather than confront these pleading problems, Plaintiffs baselessly claim that the Savings Plan and Retail Plan should be treated as a singular plan for comparison purposes. Opp. at 16. Merely because Plaintiffs chose to file one lawsuit against two related companies that sponsor two different plans does not mean the two plans should be considered as one. Plaintiffs further insist that the Plans should have been able to obtain lower fees given their *combined* size, including because single plans with fewer participants had lower fees. *Id.* On this point, Plaintiffs double down on their assertion that recordkeeping fees decrease as the number of participants increases. Yet Plaintiffs do not (and cannot) dispute that their own allegations reflect just the *opposite*. Mem. at 19 n.23. The Opposition fails to reconcile this inconsistency in Plaintiffs' own pleading.

Plaintiffs also complain they are hamstrung from pleading apt comparators due to the "limited universe of comparator option[s]." Opp. at 17. The Complaint belies this assertion,

---

[11] Plaintiffs' other cases miss the mark. Opp. at 15-16. Neither *Mator* nor *Rodriguez* involved a services agreement identifying the recordkeeping fees. *See Mator v. Wesco Distrib., Inc.*, 102 F.4th 172 (3d Cir. 2024); *Rodriguez*, 2022 WL 16648825. And *Seidner v. Kimberly-Clark Corp.*, 2023 WL 11981126, at *5 n.4 (N.D. Tex. Dec. 13, 2023), involved a discovery dispute, not a motion to dismiss.

alleging there are more than one thousand 401(k) plans with more than $1 billion in assets. Compl. ¶ 128. Similarly, Plaintiffs try to sidestep the Complaint's cherry-picked years of comparators, Mem. at 19, claiming without support that they swapped plans in and out "based on comparability of services and size." Opp. at 20. Their concession undercuts the Complaint's assertion that all plans receive the same services. Moreover, a plan's assets and participant numbers do not swing so wildly from year-to-year. Compl. ¶¶ 103, 122.

Plaintiffs point to a few cases to argue that alleging "smaller comparator" plans paid less suggests a fiduciary breach. Opp. at 16-17. These cases are inapposite. None involved services agreements that, like here, demonstrated the plan's recordkeeping fees were far lower than alleged (and even lower than some comparators). Mem. at 15. The complaints in those cases also asserted different allegations of imprudence. *See, e.g.*, *Hughes v. Nw. Univ.*, 63 F.4th 615, 632-34 (7th Cir. 2023) (alleging failure to consolidate the number of recordkeepers); *Brown*, 2023 WL 2383772, at *7 (challenging the use of a fixed-percentage fee rather than a fixed-dollar fee and the failure to consolidate the number of recordkeepers); Class Action Complaint ¶¶ 61-67, *Coviello v. BHS Mgmt. Servs., Inc.*, No. 20-cv-30198 (D. Mass. Dec. 30, 2020), 2020 WL 13999776 (alleging revenue sharing resulted in paying recordkeeper as much as $310 per participant when survey data found no similarly sized plan paid more than $79 per participant).

Plaintiffs' effort to distinguish *England v. DENSO International America, Inc.*, 136 F.4th 632 (6th Cir. 2025), falls flat. Plaintiffs point to the Complaint's allegation that Defendants failed to leverage the Plans' size to negotiate a lower fee and argue it shows "how participants could pay lower fees 'without seeing a reduction in services or quality,'" unlike *England*. Opp. at 17 (quoting *England*, 136 F.4th at 639). But the *England* plaintiffs made the very same allegation, and the Sixth Circuit still rejected their claim as implausible. *See England*, 136 F.4th at 634 (explaining

12

the plaintiffs alleged that the defendants failed to leverage the plan's "substantial assets" and "use their significant bargaining power to negotiate lower fees"). Plaintiffs also argue that many of the *England* plaintiffs' comparators were in an "entirely different size category," claiming the Complaint's comparators are not. Opp. at 17. Plaintiffs are wrong. Six of Plaintiffs' fourteen comparators have less than $1 billion in assets—two with less than $500 million—and thus are not "large" plans (as defined by Plaintiffs).[12] Mem. at 18-19. And *every comparator plan* identified in the Complaint has larger assets than the Retail Plan. As in *England*, Plaintiffs fail to state a plausible claim. Mem. at 16-17.[13]

### 3.    Plaintiffs Fail To Allege That The Plans' Recordkeeping Fees Were Excessive Relative To Services Rendered.

Defendants explained that Plaintiffs fail to allege that the Plans' recordkeeping fees were "excessive relative to the services rendered," as required to state a plausible claim. *Lalonde*, 728 F. Supp. 3d at 157-58 (citation omitted); Mem. at 16-17. The Opposition does not identify any context-specific allegations in the Complaint regarding the services provided to the Plans or to Plaintiffs' comparator plans, relying only on Plaintiffs' sweeping allegation that *all* large plans receive the same services. Opp. at 18 (emphasizing the "fungibility of services"). This does not suffice to state a plausible imprudence claim. *Lalonde*, 728 F. Supp. 3d at 158; *see also Brewer v. All. Coal, LLC*, 2025 WL 3527171, at *6 (N.D. Okla. Dec. 9, 2025) (dismissing similar claim); Mem. at 16-17 & n.22 (collecting cases).

---

[12] Plaintiffs also do not dispute that, like in *England*, the fees purportedly paid by their comparator plans vary considerably. 136 F.4th at 637. In other words, fee levels are driven by factors other than "imprudence." Mem. at 15-16 n.20.

[13] *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014), cited at Opp. 18, discussed evidence presented at trial regarding process violations and is irrelevant, particularly where the Complaint lacks allegations about Defendants' fiduciary process.

As *England* explains, "there is a distinction between generally alleging that bundled recordkeeping and administrative services provided to [large] plans all offer essentially the same thing and alleging that the services offered to and utilized by the Plan here did not justify the cost difference in fees[.]" 136 F.4th at 637. Like the deficient complaint in *England*, the Complaint here merely alleges the former. *Id.* at 638. For example, it alleges that all recordkeepers provide "A La Carte" services for additional costs, but not whether the Plans or Plaintiffs' comparators received any of those services. *See Lard*, 2023 WL 6198805, at *4.

The services agreements show why context matters. Empower provided services beyond those Plaintiffs allege are part of the standard "suite" provided to all "large" plans, including annual non-discrimination testing, preparation of a prototype plan document, and communications to participants regarding specific investment line-up changes when those occur. *Compare* Compl. ¶ 113 *with* Dkts. 28-3 at 4-6; 28-4 at 4-6. Although the Complaint alleges that "bundled" services provided to all plans exclude the preparation of an annual "IRS Form 5500," Compl. ¶ 113, Empower provided that service to the Plans here. Dkt. 28-3 at 5 ("No additional fee" for preparation of annual Form 5500); Dkt. 28-4 at 5 (same). The agreements also reflect that Empower provides twenty-four educational or enrollment meetings with Plan participants each year, but such meetings are not listed as the kind of "participant education" Plaintiffs claim is provided by all recordkeepers to all large plans. Compl. ¶ 113 (alleging "participant education" includes only "newsletters, web articles, [and] standard communication materials"). By contrast, some of the "bundled" services identified in the Complaint do not appear in the Plans' services agreements. *Compare id.* ("suite" includes "participant tax reporting services" and "plan consulting") *with* Dkts. 28-3 at 4-6; 28-4 at 4-6. The Complaint paints with too broad a brush. Without alleged "facts sufficient to ascertain" precisely what services the recordkeeping fees paid

14

for, the Court cannot plausibly infer a fiduciary breach. *Lalonde*, 728 F. Supp. 3d at 158.

Pointing to Form 5500 "service codes," Opp. at 18-19, does not rescue Plaintiffs' claim. The Complaint does not bother identifying the type of service designated by each code. Compl. ¶ 126. Regardless, a mere code number does not provide any information as to the *specific* services the plans received or whether those services were similar to those the Plans received. For instance, even though service code 15 indicates "recordkeeping and information management,"[14] that is incredibly broad and generalized. Plaintiffs also describe codes 15 and 64 as "duplicative." Opp. at 19. But "they wholly ignore that the Plan[s] … paid for services under 15 *and* 64, while the [] comparators paid for services under 15 *or* 64[,]" which is a critical difference warranting dismissal. *Gosse v. Dover Corp.*, 2025 WL 2996795, at *4 (N.D. Ill. Oct. 24, 2025).

The remaining service codes listed for the Plans and comparators vary, Compl. ¶ 126, undermining Plaintiffs' contention that all plans received "comparable" levels and quality of services. Opp. at 6; *see, e.g.*, *Gosse*, 2025 WL 2996795, at *4 (dismissing claim "comparing apples to oranges" where "underlying services [were] dissimilar"). For example, Plaintiffs allege that the recordkeeper for the FedEx Office and Print Services 401(k) Retirement Savings Plan provided nine kinds of "services" in 2019 in exchange for a $25 per-participant fee (codes 15, 16, 21, 25, 26, 37, 50, 52, and 54), while the recordkeeper for the PG&E Corporation Retirement Savings Plan provided just four for $29 per participant (codes 37, 64, 65, and 71). Compl. ¶ 126. There is almost *no overlap* between the service codes associated with those two plans. *Id.* Plaintiffs do not allege *what* services the FedEx and PG&E plans received or *why* a plan that ostensibly received more than twice the number of services than another plan would pay less for those services. Indeed,

---

[14]    *See* U.S. Dep't of Labor, Instructions for Form 5500 (2023), at 30, https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2023-instructions.pdf (last visited Feb. 12, 2026).

the Eighth Circuit held that drawing an inference of imprudence based on a comparison to the same FedEx plan "just doesn't work" because the service codes showed the FedEx plan paid for additional services like investment advice that other plans did not. *See Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1139 (8th Cir. 2024) (rejecting argument as asking the court to "draw an inference of mismanagement from the differing costs of two grocery baskets with different items").

The Complaint's threadbare "service code" allegations do not plausibly suggest that the Plans here paid excessive fees. *See id.* at 1140; *Mateya v. Cook Grp. Inc.*, 2024 WL 6879794, at *8 (S.D. Ind. Jan. 23, 2024) (dismissing claim despite service code allegations).[15]

### C.    Plaintiffs' Derivative Duty To Monitor Claim Fails.

Because Plaintiffs' imprudence claim fails, *see supra*, their monitoring claim fails, too. *Barchock*, 886 F.3d at 55. Additionally, Plaintiffs do not dispute that they merely plead legal conclusions regarding Staples, Inc.'s and USR Parent Inc.'s alleged failure to monitor, which is insufficient to state a claim. Mem. at 20.

### III.    CONCLUSION

For the foregoing reasons and those set forth in Defendants' Memorandum, the Court should dismiss Counts I and II of Plaintiffs' Complaint with prejudice.

---

[15] In support of their service codes argument, Plaintiffs rely on *Mator*, where the complaint alleged that the recordkeeper was paid an asset-based fee rather than a per-participant fee, resulting in increased compensation without a corresponding increase in services, and the recordkeeper received uncapped direct and indirect compensation of $153 to $154 per participant compared to an " industry average" fee of $40 to $60 per participant. 102 F.4th at 180, 185. There are no such allegations in Plaintiffs' Complaint. Additionally, *Dukes v. AmerisourceBergen Corp.*, 2024 WL 4282309 (W.D. Ky. Sept. 24, 2024) (cited at Opp. 18), is likely no longer good law in the Sixth Circuit because it pre-dates *England*.

Dated: February 17, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Deborah S. Davidson*
Deborah S. Davidson*
110 North Wacker Drive
Chicago, IL 60606-1511
Tel.: (312) 324-1000
Fax: (312) 324-1001
deborah.davidson@morganlewis.com

Abbey M. Glenn*
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel.: (202) 739-3000
Fax: (202) 739-3001
abbey.glenn@morganlewis.com

Joshua M. Adler (BBO# 706905)
One Federal Street
Boston, MA 02110-1726
Tel.: (617) 341-7700
Fax: (617) 341-7701
joshua.adler@morganlewis.com

*Admitted *pro hac vice*

*Attorneys for Defendants Staples, Inc., USR Parent Inc., the Staples, Inc. Committee on Employee Benefit Plans, and the Staples, Inc. 401(k) Investment Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, the foregoing document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Deborah S. Davidson*
Deborah S. Davidson

18